# SUPREME COURT OF THE UNITED STATES

## JAMES CALVERT *v.* TEXAS

### ON PETITION FOR WRIT OF CERTIORARI TO THE COURT OF CRIMINAL APPEALS OF TEXAS

No. 20–701.   Decided May 17, 2021

The petition for a writ of certiorari is denied.

Statement of JUSTICE SOTOMAYOR respecting the denial of certiorari.

Petitioner James Calvert was convicted in Texas of murdering his ex-wife. At sentencing, the State called David Logan, a former corrections officer. Logan testified in detail about an incident in which an inmate stabbed him in the eye with a pencil, leaving him blind in that eye. The State introduced a medical scan showing that the pencil traveled four inches into Logan's brain before coming to rest against an artery. Logan was unsure why the inmate attacked him, but testified that if an inmate "'has it on his mind to hurt you, there's nothing you can do.'" 2019 WL 5057268, *58 (Tex. Crim. App. 2019).

You may be asking what Calvert had to do with this gruesome incident. The answer is nothing. The State nonetheless argued that Logan's testimony and brain scan were admissible because they revealed "an inmate's opportunity for violence within the penitentiary." 164 Record 20. "Do you think they can be controlled in the pen, these inmates?" the State rhetorically asked the jury in its closing argument. 171 *id.,* at 128. "Then you tell me why David Logan got a pencil stabbed into his brain." *Ibid.* "Because of what happened to [Logan]," the State argued, Calvert "should get the death penalty." 164 *id.,* at 19. At the jury's recommendation, the trial court sentenced Calvert to death.

Calvert appealed. He argued that admission of the evidence about the inmate's attack on Logan violated his right

to individualized sentencing under the Eighth Amend-
ment.[1]  See *Woodson* v. *North Carolina*, 428 U. S. 280, 303
(1976) (plurality opinion) (capital sentencing proceedings
must "allow the particularized consideration of relevant as-
pects of the [defendant's] character and record").  The Texas
Court of Criminal Appeals disagreed, holding that "[t]he in-
dividualized sentencing requirement is satisfied when the
jury is able to consider and give full effect to a defendant's
mitigating evidence."  2019 WL 5057268, *59.  That re-
quirement was satisfied here, the court concluded, because
Calvert was not "prevented from presenting relevant miti-
gating evidence." *Ibid.*

Calvert now asks this Court to grant certiorari.[2]  In my
view, Calvert raises a serious argument that the State's re-
liance on a graphic instance of violence by an unrelated in-
mate to prove that he posed a future danger deprived him
of his right to an individualized sentencing.

Despite this weighty question, I do not dissent from the
decision to deny Calvert's petition, because I agree that his
claim does not meet the Court's traditional criteria for

------

[1] Calvert also argued that admission of the evidence about the inmate's
attack on Logan violated the Texas Rules of Evidence.  The Texas Court
of Criminal Appeals agreed, but found the error harmless "because the
State presented considerable admissible evidence of [Calvert's] future
dangerousness and the prison conditions in which he would be confined."
2019 WL 5057268, *59 (2019).

[2] Calvert raises another claim based on courtroom deputies adminis-
tering a 50,000-volt electric shock to him because of his failure to follow
the court's rule that he stand when addressing the court.  While the
Texas Court of Criminal Appeals agreed with Calvert that the incident
violated due process, it denied relief, concluding that the error was not
structural because it occurred outside of the presence of the jury and did
not affect Calvert's presumption of innocence or ability to participate in
his defense at trial.  *Id.,* at *9–*11.  Although it may be appropriate for
this Court to defer to the lower court's factbound prejudice determina-
tion, I underscore how astonishing it is for a court to direct deputies to
shock a defendant during trial.  If there could ever be an excuse for such
violence, enforcing courtroom decorum would not be it.

granting certiorari. See this Court's Rule 10. The legal question Calvert presents is complex and would benefit from further percolation in the lower courts prior to this Court granting review. Certainly, the law is not clear enough to warrant this Court summarily reversing the Texas Court of Criminal Appeals, as Calvert requests. See *Kansas* v. *Carr*, 577 U. S. 108, 123 (2016) (declining to "shoehorn . . . into the Eighth Amendmen[t]" a claim that the jury considered evidence that "clouded [its] consideration of mitigating evidence," and suggesting such claims should be brought under the Due Process Clause); see also *Sears* v. *Upton*, 561 U. S. 945, 946 (2010) (*per curiam*) (summarily reversing because constitutional error was "plain from the face of the state court's opinion").

I write separately to emphasize that the denial of Calvert's petition should not be construed as a rejection of his claim on the merits.[3] Nor does the denial of certiorari suggest the Court approves of the State's tactics. As the court below recognized, the gruesome attack on Officer Logan "had no connection" to Calvert. 2019 WL 5057268, \*58. Indeed, the State introduced no evidence that Calvert "had attempted to attack or physically injure anyone" while incarcerated. *Ibid.* The State asked the jury to sentence Calvert to death in part because of a different person's violent conduct that had nothing to do with Calvert. It succeeded. Although this case does not meet this Court's traditional criteria for certiorari, it still stands as a grim reminder that courts should rigorously scrutinize how States prove that a person should face the ultimate penalty. Juries must have

––––––––

[3] In addition to Calvert's Eighth Amendment claim, the State's conduct here may implicate due process. The introduction of irrelevant evidence can "so infec[t] the sentencing proceeding with unfairness as to render the jury's imposition of the death penalty a denial of due process." *Romano* v. *Oklahoma*, 512 U. S. 1, 12 (1994). The Court's decision today should not be viewed as a rejection of the merits of that potential claim, either.

a clear view of the "uniquely individual human beings" they are sentencing to death, *Woodson*, 428 U. S., at 304 (plurality opinion), not one tainted by irrelevant facts about other people's crimes. The Constitution and basic principles of justice require nothing less.